# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

In the Matter of the Search of

(Name, address or brief description of person or property to be searched)

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

Basement Apartment of
504 Fern Place Northwest,
Washington, D.C.

CASE NUMBER:

Special Agent Joshua C. Green, being duly sworn depose and say:

I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives and have reason to believe that
on the premises known as (name, description and or location)

The basement apartment that is located in the premise known as
504 FERN PLACE, NORTHWEST, WASHINGTON, D.C.
(This residence is described as a two story red brick single family residence with white windows, and cream colored
siding on the front of the residence. When facing the residence marked "504," directly to the left of the residence
marked "504" are railroad tracks. When facing the residence marked "504," the residence directly to the right of the
residence marked building "504" in numbered "506." The residence marked "504" is east of Blair Road and north of
Piney Branch Road in NORTHWEST, Washington, D.C. There is a brown colored placard attached to the cream
colored siding on the north side (front) of the residence. The numbers "504" are gold in color and affixed to the
brown colored placard. The main entrance to the residence marked "504" is located on the west side of the residence.
The main (west side) entrance is covered by a black security grate. There is a gold colored door knob on the left side
of the black colored security grate. Directly behind the black security grate is a white colored door. Directly above
the black security grate is a white & maroon colored awning. To the left of the black colored security grate is a black
colored mailbox that is affixed to the residence. There is a wooden privacy fence attached to the east side of the
residence marked "504.").

in the District of Columbia, there is now concealed certain property, namely (describe the person or property)

        See Attachment A

Which are (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and instrumentalities of alleged crime(s): In violation of Title 21, United States Code, Section 841(a)(1).

The facts to support the issuance of a Search Warrant are as follows:

See Affidavit which is incorporated herein for reference, Continued on the attached sheet and made a part hereof.

_____
- Frank L. Oliver, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

(Affiant)

Sworn to before me, and subscribed in my presence
_____ at Washington, D.C.
Date and Time Issued

_____          _____
Name and Title of Judicial Officer                              Signature of Judicial Officer

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES**
**WASHINGTON, D.C.**

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:**

**THE BASEMENT APARTMENT OF**
**504 FERN PLACE, NORTWEST**
**WASHINGTON, D.C.**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

---

The basement apartment that is located in the premise known as 504 FERN PLACE, NORTHWEST, WASHINGTON, D.C. (This residence is described as a two story red brick single family residence with white windows, and cream colored siding on the front of the residence. When facing the residence marked "504," directly to the left of the residence marked "504" are railroad tracks. When facing the residence marked "504," the residence directly to the right of the residence marked building "504" in numbered "506." The residence marked "504" is east of Blair Road and north of Piney Branch Road in NORTHWEST, Washington, D.C. There is a brown colored placard attached to the cream colored siding on the north side (front) of the residence. The numbers "504" are gold in color and affixed to the brown colored placard. The main entrance to the residence marked "504" is located on the west side of the residence. The main (west side) entrance is covered by a black security grate. There is a gold colored door knob on the left side of the black colored security grate. Directly behind the black security grate is a white colored door. Directly above the black security grate is a white & maroon colored awning. To the left of the black colored security grate is a black colored mailbox that is affixed to the residence. There is a wooden privacy fence attached to the east side of the residence marked "504.").

Your affiant, Frank Oliver, being duly sworn, does depose and state that:

1. Your affiant in this matter is Special Agent Frank Oliver, of the Bureau of Alcohol, Tobacco and Firearms (ATF). I am currently assigned to the Washington Area High Intensity Drug Task Force (HIDTA). I have been a Special Agent with ATF for approximately 7 1/2 years. Prior to becoming a Special Agent with the ATF, your affiant was a Narcotics Investigator/ Officer with the United States Park Police for approximately 10 years. Your affiant has conducted numerous narcotic trafficking and gang related investigations. Your affiant has participated in the preparation, presentation and execution of numerous search and arrest warrants, which have resulted in the recovery of narcotics, weapons and documentary evidence indicative of narcotics and firearm trafficking. In addition, I have attended training related to narcotics and firearms at the Federal Law Enforcement Training Center in Glynco, Georgia and have received

1

additional criminal investigation training, particularly related to illegal drug trafficking, offered by HIDTA.

2.   I have participated in the execution of over two hundred search warrants in the Washington, D.C. metropolitan area, which have resulted in the recovery of firearms and ammunition, illegal drugs and suspected drug packaging material, suspected drug paraphernalia, including, but not limited to, electronic digital scales, cooking equipment, various chemical additives associated with illegal drug manufacturing, and other items for drug usage.  In addition, the execution of these warrants have also led to the recovery of items such as shell casings, magazines, holsters, gun cases and safes, photographs of individuals with narcotics and firearms, large amounts of U.S. currency, records and documents associated with drug trafficking, and documentary evidence indicative of ownership and/or control of a premises and/or vehicle.

3.   During the course of your affiant's training and professional experience in the area of law enforcement, I have become familiar with narcotics and illegal drug-related crime in the Washington, D.C. metropolitan area and with the methods used to manufacture, package and to distribute controlled substances, including cocaine, in both powder and base forms.  This knowledge has in part been the result of being present during numerous interviews of defendants, witnesses, confidential informants, police officers and other law enforcement officers.  In addition to my participation in numerous search warrants as described above, I have also participated in the arrest of numerous individuals in the Washington, D.C. metropolitan area for narcotics-related offenses.  Based on this training and experience, I have learned that:

A)  It is common for narcotic traffickers to secrete narcotics in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities.  In addition, items and paraphernalia used to process or package illegal narcotics are often stored along with such secreted narcotics.

B)  It is common for individuals who sell narcotics to maintain in their residence large amounts of U.S. currency in order to maintain and finance their ongoing narcotic business.  Other contraband proceeds of narcotics sales, such as jewelry and other valuables, may be stored in the residence along with currency. Additionally, your affiant knows that these same individuals keep receipts, bank statements, money drafts, letters of credit, money orders and cashier checks, bank checks, currency counting machines and other items related to the obtaining, secreting, transfer, or concealment of assets in the form of U.S. currency and other financial instruments.

C)  It is common for records of narcotic transactions and papers relating to the accumulation and disposition of assets (such as, but not limited to, books,

2

ledgers, bank books and statements, and notes or logs) derived from narcotic trafficking to be stored by narcotic distributors in residences and/or vehicles. In addition, it is common for papers and documents related to the ownership, occupancy and/or control of the premises/vehicles to be stored within the premises and/or vehicles.

D) It is common for people who sell illegal drugs to maintain addresses, telephone books, electronic paging devices, cellular telephones with digital photographic capability and other papers reflecting names, addresses, and/or telephone numbers of associates and co-conspirators. These items are frequently kept at the same location as the controlled substances. In addition, drug traffickers have photographs or video tapes of themselves and their associates in the drug trade, as well as property derived from the distribution of narcotics, and such items are often kept in their residence.

E) Participants in drug trafficking and other violent criminal activity often possess and maintain weapons and ammunition. Weapons are often stored in the subject's residences and/or vehicles for their protection and for the protection of their illegal narcotics and the assets generated from the sales of the illegal narcotics. Firearms are generally kept in secure locations to protect the items from theft and discovery by law enforcement authorities, thus reducing their exposure to criminal liability. In your affiant's experience, the recovery of weapons during the execution of search warrants is usually accompanied by the recovery of additional ammunition, magazines, bulletproof vests and documentary evidence indicative of ownership, maintenance and possession of firearms.

4. As this affidavit is being prepared for the limited purpose of obtaining a search warrant for the premises noted, it is not intended to include each and every fact observed by your affiant, other law enforcement officers, or known to the government. This affidavit is submitted with only those facts necessary to support probable cause for this application.

## SUMMARY OF INVESTIGATION

5. The facts and information set forth in this affidavit are based upon your affiant's personal knowledge, training, observations, experience and investigation and observations of other Investigators involved in this investigation. All observations that were not personally made by your affiant were related directly to your affiant by the persons who made such observations or who corroborated such information. Additionally, information was gathered through the use of a confidential reliable source, hereafter referred to as CI-1.

6. CI-1 has provided your affiant, as well as other law enforcement agencies with truthful information and proven reliable and credible on each and every occasion. CI-1 has made

3

controlled purchases of illegal of narcotics in this jurisdiction as well as others at the direction of law enforcement officers and supplied your affiant and other local law enforcement agencies with reliable information on at least 10 separate occasions in the past. CI-1 has personally sold various types of controlled substances and is able to recognize various types of narcotics in their various forms and is familiar with the methods in which drug dealers conceal, package, and traffic their product for both wholesale and street level distribution. CI-1 has never been known to provide your affiant, members of this agency, or any other law enforcement entity with untruthful or unreliable information.

7. Within the past 30 days, CI-1 spoke with your affiant regarding an individual known to CI-1 as MAURICIO MENDOZA. CI-1 stated that it knew MENDOZA to be an illegal drug trafficker who sells and stores large quantities of cocaine in the Northwest quadrant of Washington, D.C. CI-1 stated that MENDOZA uses the basement of the residence located at 504 FERN PLACE, NORTHWEST, WASHINGTON, D.C. as a stash house for his illegal narcotics operation. CI-1 stated that it has seen large amounts of cocaine, firearms, U.S. currency and a bullet proof vest stored inside of the basement apartment located in the residence located at 504 FERN PLACE, NORTHWEST, WASHINGTON, D.C. CI-1 stated that MENDOZA keeps large amounts of cocaine and U.S. currency in THE BASEMENT APARTMENT of 504 FERN PLACE, NW, WASJINGTON, D.C. for long periods of time. CI-1 has also accompanied your affiant to the residence located at 504 FERN PALCE, NORTHWEST, WASHINGTON, D.C., and positively identified the residence as MENDOZA'S stash location. CI-1 stated that MENDOZA lives at XXXXX XXXXX XXXXX Lane in Upper Marlboro, Maryland. CI-1 has also accompanied your affiant to the residence located at XXXXX XXXXX XXXXX Lane, Upper Marlboro, Maryland, and positively identified the residence as MENDOZA'S primary residence. CI-1 has stated that it has counted hundreds of thousands of dollars in U.S. currency with MENDOZA in the past. CI-1 stated that MENDOZA keeps large amounts of U.S. currency that he has acquired from his illegal drug trafficking business, for long periods of time due to the fact that he possess such large quantities of cocaine and does not need to re-up frequently.  CI-1 stated that prior to conducting a drug transaction in the Northwest quadrant of Washington, D.C., MENDOZA will generally leave his residence at XXXXX XXXXX XXXXX Lane in Upper Marlboro, Maryland and then travel the residence at 504 FERN PLACE, NORTHWEST, WSHINGTON, D.C.  CI-1 stated that after arriving at the residence located at 504 FERN PLACE, NW, MENDOZA would enter through the wooden security fence and proceed to the basement entrance that is located on the left side of the residence and then use a key to enter the basement apartment. CI-1 stated that after MENDOZA enters the basement apartment he retrieves the illegal drugs from locked containers that he has inside of the basement apartment that is located inside of 504 FERN PLACE, NW, WASHINGTON, D.C. CI-1 then stated that MENDOZA will exit the residence and place illegal drugs in hidden compartments, that are located in two of the vehicles that he (MENDOZA) owns. CI-1 stated that MENDOZA owns a silver colored, 2 door, Honda Accord and a gold colored, 2 door Honda Accord, each of which CI-1 is familiar with, and each vehicle contains hidden

4

compartments in the rear passenger seating areas. CI-1 then provided your affiant with the technical knowledge and the proper sequence of controls, that are inside of these vehicles, that are needed to open and close the hidden compartments that are located in both of  Honda Accords that are owned by MENDOZA . CI-1 stated that after secreting the illegal drugs in the hidden compartments, MENDOZA will then respond to the meeting locations and carryout the illegal drug transaction with individuals.

8.  Research was conducted by your affiant using various computer databases. Your affiant identified the individual that CI-1 had spoke of as MAURICIO MENDOZA, FBI #XXXXXXXXX, Virginia State ID # XXXXXXXXXX, with a date of birth of 09/14/XX, 5'9," 200lbs of XXXXX XXXXX XXXXX Lane, Upper Marlboro, Maryland. A booking photograph of Mauricio MENDOZA from a prior Montgomery County, Maryland arrest was obtained by your affiant. After obtaining this booking photograph, your affiant again met with CI-1 and showed CI-1 a photograph obtained by your affiant.  CI-1 stated that the person in the photograph was the individual known to it as Maurico MENDOZA who sells large quantities of cocaine in the Northwest quadrant of Washington, D.C. and the individual who uses the residence located at **504 FERN PLACE NORTHWEST, WASHINGTON, D.C.** to store large amounts of cocaine, firearms, a bulletproof vest and U.S currency.

9.  A check of the records compiled by the National Crime Information Center (NCIC) and Maryland Court records was conducted on Maurico MENDOZA (Date of Birth: September 14, 19XX; Social Security Number XXX-XX-XXXX).  These records indicate that MENDOZA has had numerous prior arrests in Montgomery County, Maryland for narcotics, firearm, and burglary and auto theft violations. Of these arrests in Montgomery County, Maryland, MENDOZA was found guilty of Felony theft in 1995, found guilty of Felony Possession with Intent to Distribute Cocaine in 1995 and Felony-Violation of Probation in 1998. All of these convictions resulted in sentences in excess of 1 year.   These records also show that MENDOZA was arrested and convicted of Felony Possession with Intent to Distribute Cocaine in Fairfax County, Virginia in 1998. The Virginia records also show that MENDOZA was found guilty of a Probation violation, a Felony, in Virginia in 2002. These records indicate that MAURICIO MENDOZA is at least a three (3) time convicted felon.

10. Within the last 30 days, your affiant has met with CI-1 to conduct a controlled purchase of cocaine hydrochloride from Mauricio MENDOZA. Surveillance units were placed at MENDOZA'S residence located at XXXXX XXXXX XXXXX Lane, Upper Marlboro, Maryland. CI-1 then contacted MENDOZA in regards to purchasing an amount of cocaine from MENDOZA. During the conversation CI-1 and MENDOZA agreed to meet in an area of the Northwest quadrant of Washington, D.C. to conduct the narcotics transaction. Prior to the transaction, CI-1 was searched and found to be free of any contraband or U.S. currency. CI-1 was then given an amount of recorded U.S. currency by law enforcement officers and was then escorted to the Northwest quadrant of Washington, D.C to meet with MENDOZA. CI-1 was under constant surveillance and at

no time met with any other individuals or spoke with any other individuals prior to meeting with MEDOZA. A short time later, surveillance units observed MENDOZA exit his residence and enter a silver colored, Honda Accord, bearing DC registration CU3533 and depart the area. Surveillance units followed MENDOZA to the area of Fern Place, Northwest, Washington, D.C. and then terminated the surveillance. A short time later, surveillance units reestablished surveillance of MENDOZA and followed MENDOZA to the meeting location with CI-1. At the meeting location, MENDOZA was observed by law enforcement officers exiting a silver colored, Honda Accord, bearing DC registration CU3533, with a bag in his hand. MENDOZA then met with CI-1 for a short period of time. MENDOZA then returned to his vehicle empty handed. Following the drug transaction with MENDOZA, CI-1 was escorted back to a predetermined location and met with your affiant and other law enforcement officers. At this time, CI-1 stated that it had met with MENDOZA at the location in the Northwest quadrant of Washington, D.C. and exchanged the U.S. currency given to it by law enforcement officers with MENDOZA for a quantity of cocaine. CI-1 then turned over a quantity of cocaine hydrochloride to law enforcement officers. This cocaine hydrochloride was field tested with positive results by law enforcement officers with a positive reaction for cocaine. After a period of time, MENDOZA'S silver Honda Accord was observed at XXXXX XXXXX XXXXX Lane, Upper Marlboro, Maryland.

11. On other dates, your affiant has observed MENDOZA arriving at 504 Fern Place, Northwest, Washington, D.C., while driving the silver Honda Accord, bearing DC registration CU3533. Your affiant has observed MENDOZA exiting his vehicle and walking to and entering the wooden privacy fence that surrounds the left side of 504 Fern Place, Northwest, Washington, D.C., and then exiting after a short period of time. These actions by MENDOZA, regarding how MENDOZA enters the basement apartment located within 504 FERN PLACE, NW, WASHINGTON, D.C. are just as CI-1 stated to your affiant.

12. Through the use of an electronic tracking device that was concealed on the silver, 2 door, Honda Accord, bearing D.C. registration CU3533, by law enforcement officers, it has been confirmed that this vehicle has responded to and parked in the direct vicinity of 504 FERN PLACE, NORTHWEST, WASHINGTON, D.C. at other times within the last three (3) weeks that were not witnessed by your affiant or other law enforcement officers. A check of DC registration CU3533 by your affiant, using law enforcement data bases, revealed that the 1999, two (2) door, Honda Accord, was registered to Mauricio E. MENDOZO, with a date of birth of 09/14/19XX, with a listed address of 1401 Tuckerman Street, NW, Washington, D.C.

13. MENDOZA and three (3) occupants of MENDOZA'S 1999 Honda Accord, bearing DC registration CU3533, were removed from MENDOZA'S vehicle following a traffic stop that was performed by the United States Park Police near 13th & Peabody Street, NW, Washington, D.C. for traffic and opened alcoholic beverage container violations on or about February 21, 2008. After the occupants were removed from the vehicle, your

affiant personally confirmed that the 1999 Honda Accord, bearing DC registration CU3533, belonging to MENDOZA, does in fact have a working, hidden compartment within the driver's side rear passenger area. This compartment opened in the exact sequence of controls that was supplied to your affiant by CI-1.

14. On February 27, 2008, MAURICIO MENDOZA was indicted in the United States District Court for the District of Columbia  for violations of Title 21, United States Code, Section 841(a)(1)-Distribution of Cocaine Hydrochloride-500 grams or more.

15. In summary, based on the information contained herein, your affiant believes that Maurico MENDOZA is utilizing **THE BASEMENT APARTMENT OF 504 FERN PLACE NORTHWEST, WASHINGTON, D.C.** as a base to conduct and facilitate an illegal drug trafficking operation involving cocaine.  Furthermore, based on the aforementioned investigation, your affiant's training, personal observations and experience, your affiant has probable cause to believe that this residence contains evidence, instrumentalities and fruits of the offense of Distribution of Cocaine, in violation of Title 21, United States Code, Section 841(a)(1).  Your affiant believes that probable cause exists that within **THE BASEMENT APRTMENT OF 504 FERN PLACE, NORTHWEST, WASHINGTON, D.C.** there is presently concealed illegal drugs such as cocaine, drug packaging material and paraphernalia, records, receipts, bank books and statements, notes and ledgers, address books, contact telephone numbers and names, cellular phones with digital photographic capability and/or digital paging devices, documents related to the ownership, occupancy and/or control of the premises, illegal weapons, as well as U.S. Currency, possibly containing recorded U.S. government funds and/or other proceeds of narcotic sales.  These items are listed more completely on a separate sheet included with this application and labeled "Attachment A".  I therefore respectfully request a search warrant be issued for the premises, curtilage, and locked boxes within the premises and curtilage, of **THE BASEMENT APARTMENT OF 504 FERN PLACE NORTHWEST, WASHINGTON, D.C.** authorizing the seizure of the aforementioned items and any additional contraband discovered within.

_____
Frank Oliver
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives


Sworn to and subscribed before me this _____ day of February, 2008.


_____
United States Magistrate Judge
District of Columbia

7

## ATTACHMENT A

### List of Items to be Seized at Premises

1.  Illegal drugs, to include, but not limited to, cocaine.

2.  Paraphernalia for packaging, cutting, weighing and distributing illegal drugs, including but not limited to, scales, baggies, and cutting agents.

3.  Firearms, firearm magazines, firearm attachments, ammunition, firearm parts and holsters as well as documentation of the purchase, storage, possession, disposition, dominion and control of firearms, including paperwork and receipts.

4.  United States currency, jewelry and financial instruments.

5.  Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

6.  Address and telephone books and papers reflecting names, address and telephone numbers.

7.  Books, records, receipts, bank statements, and records, money drafts, letters of credit, money order and cashier's checks related to the obtaining, secreting, transfer, and concealment of assets and/or the expenditure of money.

8.  Electronic equipment, such as cellular telephones, cellular telephones with digital photographic capability, facsimile machines, telephone answering machines, telephone paging devices, currency counting machines, computers, and any information stored in memory or contained in any related hardware and software.

9.  Photographs and/or video tapes, in particular, those photographs and/or video tapes of co-conspirators, assets, controlled substances, or of individuals with controlled substances and those that assist in identifying associates and conspirators.

10. Indicia of occupancy, residence, and ownership of the premises, including but not limited to, utility and telephone bills, mail matter, canceled envelopes, and keys.

11. Any locked or closed container(s) believed to contain any of the above listed evidence.